UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY M. BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-1366-DML-JMS |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Judicial Review

Ashley M. Bailey applied in April 2011 for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act. Her application alleged a disability onset date of February 20, 1997, when she was six years old. Acting for the Commissioner of the Social Security Administration following a hearing held January 14, 2013, administrative law judge Mark C. Ziercher issued a decision on February 22, 2013, finding that Ms. Bailey is not disabled. The Appeals Council denied review of the ALJ's decision on June 17, 2014, rendering the ALJ's decision for the Commissioner final. Ms. Bailey timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Bailey contends the ALJ erred by (a) failing to address listing 12.05C, (b) failing adequately to support his credibility determination, and (c) failing to account for her social dysfunction in the RFC. As addressed below, the court rejects Ms. Bailey's arguments and AFFIRMS the Commissioner's decision.

**Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Ms. Bailey is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed

impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would

accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. Brief Biographical and Educational Background

Ms. Bailey was born in September 1990, and was 20 years old when she filed her application for SSI disability benefits.  Though found to have a mild mental handicap in her early school years, to have trouble with reading, and to require accommodations for certain classes and test-taking, Ms. Bailey's junior high teachers stated she was cooperative, likable, and had a great attitude toward learning.  (R. 343, 490).  Her teachers believed she was on track to pursue more education after high school or to enter the work force.  (R. 343).  Ms. Bailey, however, was impregnated during eighth grade, and she had a baby before her freshman year of high school.  (R. 335, 337).  Ms. Bailey was chronically absent from

high school and did not graduate. She failed many classes in 10th grade and apparently never finished the 11th grade.

## II. The ALJ's Sequential Findings

At step one of the sequential analysis, the ALJ noted Ms. Bailey had worked after her April 2011 application date—at a buffet restaurant—but her earnings did not meet the threshold for substantial gainful activity. (R. 12). At step two, the ALJ found Ms. Bailey has the following severe impairments: bilateral knee pain, obesity, borderline intellectual functioning, and dysthymia. He found no listings were met or medically equaled, and then determined her residual functional capacity. The ALJ decided Ms. Bailey is capable of the full range of medium-exertion work, but cognitively is limited to simple work at GED Reasoning Level 02 that is routine, repetitive, and "goal-oriented" as opposed to at a production pace. (R. 15). Ms. Bailey had no past relevant work to analyze at step four. At step five, and based on the testimony of a vocational expert, the ALJ determined that Ms. Bailey's RFC and vocational profile allow her to perform a large range of unskilled and medium or light jobs that exist in significant numbers within Indiana. The jobs are church janitor, kitchen helper, hospital cafeteria worker, parking lot cashier, housekeeper, and dog bather. Accordingly, the ALJ found at step five that Ms. Bailey is not disabled.

## Analysis

Ms. Bailey contends the ALJ erred by failing to expressly mention listing 12.05C and analyze her impairments against that listing. She does not challenge the ALJ's evaluation of her depression or her physical impairments. Ms. Bailey further contends that even if the ALJ did not err at step three, the RFC is flawed because it reflects an improper credibility analysis and does not account for her social dysfunction. The court will address each argument in turn below.

**I.      The ALJ's failure to mention listing 12.05C is not grounds for remand.**

The court rejects Ms. Bailey's contentions that the ALJ ignored the possibility her impairments met or medically equaled listing 12.05C and that remand is required because he did not mention 12.05C. That listing, which had used the term "mental retardation" but now instead uses the term "intellectual disability,"[1] describes a severity of intellectual disability that is presumptively disabling, so that if a claimant meets all of the requirements of the listing, she is entitled to benefits without regard to any analysis under steps four or five, including the formulation of a residual functional capacity. *See Sims v. Barnhart,*

---

[1]     Effective September 3, 2013 (but before the ALJ issued his decision), the SSA replaced the term "mental retardation" in listing 12.05 with the term "intellectual disability." The substantive requirements of listing 12.05 were not changed, but the SSA found a change in terminology was appropriate in light of the use of the term "intellectual disability" in other federal laws and in light of the American Psychiatric Association's similar replacement in the DSM-5 of the term "mental retardation" with "intellectual disability" or "intellectual development disorder." See https://www.federalregister.gov/articles/2013/08/01/2013-18552/change-in-terminology-mental-retardation-to-intellectual-disability.

309 F.3d 424, 428 (7th Cir. 2002) (when claimant meets all of the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits); *King v. Barnhart,* 2007 WL 968746 at *4 (S.D. Ind. Feb. 26, 2007) (12.05C's standards are designed to address the situation where a combination of low mental ability and another significant mental or physical impairment impede ability to work; "Its standards are designed to identify cases in which more detailed, individualized consideration of a claimant's situation is not justified.")

Listing 12.05C states (using the terminology in effect at the time of the ALJ's decision):

> 12.05 *Mental retardation.* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

As shown, Listing 12.05C has three separate requirements: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Although the ALJ did not cite listing 12.05C by name, it is clear from the context of his decision that he in fact considered whether 12.05 was implicated by the evidence. He made several findings pertinent to the listing. First, he recited all of the evidence of Ms. Bailey's IQ testing. Second, he noted that the doctor who administered the one IQ test for which scores were consistent with mild mental retardation stated he did not have enough information about Ms. Bailey's adaptive functioning to confirm a diagnosis of mild mental retardation. Third, the ALJ accorded "significant weight" to the assessments and conclusions of the reviewing state agency physicians regarding the nature and severity of Ms. Bailey's mental impairments. Those psychologists concluded that listing 12.05C was not implicated by the evidence of Ms. Bailey's intellectual functioning, but that the appropriate listing was 12.02, titled organic mental disorders. (*See* R. 428-440 and R. 445). As noted above, Ms. Bailey does not challenge the ALJ's conclusion that listing 12.02 was not met.

The ALJ addressed the three separate IQ tests Ms. Bailey had undergone. He noted Ms. Bailey had IQ testing at age four in preschool, again at age 18 in connection with a vocational rehabilitation assessment, and again at age 20 in connection with her disability application. She was administered the Wechsler Preschool and Primary Scales of Intelligence in 1994, and her full scale IQ was measured at 81, which is much higher than the 60-70 scale under listing 12.05C. In 2008, she was administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III), and her scores were a verbal IQ of 73, performance IQ of 78, and a full

scale IQ of 74. (R. 17).  These scores are also higher than listing 12.05C requires. The ALJ described these test results as indicating "borderline" intellectual functioning.  (*Id.*)

The ALJ addressed Ms. Bailey's third IQ testing regimen in June 2011, which was administered by Dr. McIntosh.  She was administered the Fourth Edition of the Wechsler test (WAIS-IV), and her scores were:  66 in Verbal Comprehension; 67 in Perceptual Reasoning; 66 in Working Memory; 76 in Processing Speed; and a full scale IQ of 63.  All these scores are in the "extremely low range," except for the Processing Speed score, which is in the borderline range.  (R. 18).

The full-scale IQ score from the 2011 test falls within the IQ requirement under listing 12.05C, but in analyzing the scores from that testing, the ALJ noted Dr. McIntosh had declined to confirm a diagnosis of "mild mental retardation" because he did not have enough information about Ms. Bailey's adaptive functioning.  (R. 18).  Ms. Bailey complains that the ALJ unreasonably rejected the IQ scores solely based on Dr. McIntosh's failure to confirm a "diagnosis" of mild mental retardation when a diagnosis is not required to meet the listing.  Although it is true that a diagnosis itself is not required to meet the listing, low IQ scores alone are also insufficient.  Dr. McIntosh recognized (as did the ALJ with his discussion of the reason Dr. McIntosh decided that mental retardation could not be confirmed solely by the 2011 testing) that deficits in adaptive functioning manifested before age 22 are also required.  In addition, the ALJ noted in his discussion of Dr. McIntosh's report and Ms. Bailey's intellectual functioning that she had tested at

9

much higher levels of functioning in her earlier tests and that her overall adaptive functioning did not support a finding she suffered from mental retardation. (R. 19).

Third, in the opinions of state agency psychologists who reviewed all of the record evidence, including the scores from Dr. McIntosh's testing in 2011, listing 12.05C was not implicated by the evidence. Those opinions are substantial evidence to support the ALJ's focus on listing 12.02 (organic mental disorders) and not 12.05 in his written decision. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (completed disability forms in the record about whether a listing was met constitutes substantial evidence supporting an ALJ's step three finding).

The state agency reviewing psychologist, Dr. Maura Clark, specifically addressed Dr. McIntosh's report and IQ testing, and found that the overall record, including Ms. Bailey's earlier IQ test results, her school history, and her daily living activities, were not consistent with mental retardation. (R. 444). This assessment was affirmed by another state agency reviewing psychologist, Dr. Ken Lovko. (R. 484). These psychologists found that the relevant listing was 12.02 (for organic mental disorders) and not 12.05. (R. 428-440). The ALJ's explicit reliance on Dr. Clark's opinion, along with his discussion of the evidence of Ms. Bailey's IQ scores over time, and his determination that Dr. McIntosh's scores were insufficient for a finding of mental retardation, convince the court remand is not required based simply on the ALJ's omission to mention listing 12.05C by name.

## II.    The ALJ's credibility determination is supported by substantial evidence.

Because the ALJ evaluates credibility by questioning and evaluating a live witness, the ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). The ALJ is not required to find a claimant is disabled because she does not think she can work. *Rucker v. Chater,* 92 F.3d 492, 496 (7th Cir. 1996). Moreover, the ALJ's use of the backward boilerplate suggesting he first formulated an RFC and then rejected as not credible any statements inconsistent with the RFC is harmless error so long as the ALJ provides rational support for his credibility determination. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012).

Ms. Bailey contends the ALJ "did not articulate any legitimate reason for his credibility decision" and must be reversed on that basis. The court rejects her argument. The ALJ gave several reasons for doubting Ms. Bailey's credibility. Chief among them was Ms. Bailey's engaging in work activities subsequent to the filing of her disability application which required a level of functioning greater than she asserted she possesses. (R. 12). He also noted that at a time in October 2011 when Ms. Bailey had reported she could not meet the requirements for a job-training program, she had chosen to spend time going to parties every weekend and drinking. (R. 19). He noted that though she complained of severe pain from back and knee impairments, she had not received treatment for that pain or been prescribed narcotic medication. Finally, he cited Ms. Bailey having failed to attend

11

counseling sessions for periods of time even though she had reported good results from those sessions. (R. 19).

Because the ALJ's credibility determination is supported by relevant evidence, the court concludes it is not patently erroneous and is not a basis for remand.

### III. The ALJ's omission of restrictions in the RFC based on poor social functioning does not require remand.

Ms. Bailey's final assertion of error concerns the ALJ's RFC determination. She argues the ALJ erroneously failed to include a restriction relating to her poor social functioning even though she had had in the past recurring conflicts with coworkers. The ALJ did not find, however, that the totality of the evidence supported including a restriction against interactions with co-workers or others. In finding that Ms. Bailey's mental impairments caused only mild limitations in her social functioning, the ALJ cited to, among other evidence, Ms. Bailey's own statement in a function report that she does not have any "problems getting along with family, friends, neighbors, or others." (R. 14, 232). Because substantial evidence supports the ALJ's decision to exclude a social functioning restriction in his RFC, the court rejects Ms. Bailey's argument.

### Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Ms. Bailey was not disabled.

So ORDERED.

Dated: September 29, 2015

                                                Debra McVicker Lynch
                                                United States Magistrate Judge
                                                Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system